MAPLES *v.* HOWELL.
PARK, et al. *v.* HOWELL.

Apr. 20, 1953

Nos. 38644, 38645 28 Adv. S. 26 64 So. 2d 364

*W. C. Rodgers,* for appellant, Maples.

*James Stone & Sons* and *Canada, Russell & Turner*, for appellants Park and Bank.

*Fred B. Smith* and *Chester L. Sumners,* for appellee.

328

Roberds, P. J.

The object of this litigation is to determine the rights in and the control over five shares of the capital stock of the First National Bank of Oxford, Mississippi. Two proceedings are involved.

In one, H. H. Maples, on March 18, 1952, filed a petition in the chancery court against Mrs. Elsie Jewell Maples Howell, his sister, praying that she be required to deliver to him certificate of Stock No. 294, representing the five shares of stock in said Bank. It is not certain whether this petition is limited to Mrs. Howell as executrix or whether it also includes her individually. But we will deal with it in both capacities. The petitioner alleged that he is a son of J. R. Maples, who departed this life in Lafayette County, Mississippi, June 10, 1943, leaving a last will and testament dated January 3, 1933; that testator owned ten shares of stock in said Bank, of which he bequeathed five shares outright to Mrs. Howell and the other five shares to petitioner for life, remainder to Mrs. Howell; that Mrs. Howell qualified as executrix; that she surrendered to the Bank the certificate representing the ten shares, for which she obtained the issuance of two other certificates—one to herself for five shares and the other to petitioner for five shares; that Mrs. Howell claims that petitioner assigned and endorsed to her certificate No. 294, representing his five shares, but that he did not do that, and that she has wrongfully retained possession of said certificate. He prayed for a decree requiring her to deliver the certificate to him. The certificate erroneously named Maples as the owner without limitation. It should have been issued to him for life, remainder to Mrs. Howell.

Mrs. Howell answered the petition, admitting the death of Mr. J. R. Maples, and that he left the last will and testament, disposing of the Bank stock, and that she qualified as executrix, and surrendered to the Bank the certificate for the ten shares of stock, and had two new certificates issued, one to herself and the other to petitioner, all as stated in the petition. By way of further defense to the petition she set up that on November 5, 1943, pursuant to an oral agreement with petitioner, he endorsed said certificate No. 294 to her so that she might have and retain possession thereof to protect petitioner,

who was uneducated, and also protect her remainder rights, admitting that petitioner had the right to draw all of the dividends on said five shares of stock during his life and that since issuance of the stock she had retained, and then retained, such possession of the certificate of stock under those circumstances.

She further stated that on November 27, 1951, petitioner made an affidavit that said certificate of stock had been lost or destroyed, and at the same time, for purported value received, entered into a contract with James R. Park undertaking to transfer and assign said certificate to Park, but retaining the right to draw all dividends which might be paid during the life time of H. H. Maples; that the object of Park in procuring said affidavit and agreement was to possess the right to vote the stock; that the action of Park was fraudulent; that the Bank had issued to him a new certificate for said stock; that on December 8, 1951, she offered to surrender to the Bank said certificate 294 and she requested the Bank to issue to her a new certificate therefor, all which the Bank refused to do. Mrs. Howell did not make her answer a cross bill against H. H. Maples, and, of course, not against Park or the Bank, neither being a party to the proceeding. The ultimate question involved was whether Mrs. Howell had the right to retain possession of the certificate for the five shares as against Maples. The chancellor held that she did have that right and power. But he went further than that. He found that under the agreement between H. H. Maples and Mrs. Howell that ''said Mrs. Elsie Maples Howell became and is the owner of said five shares of stock and all rights and privileges thereto, except that the said H. H. Maples is to have and receive the dividends thereon as long as he shall live.'' From that decree Maples appeals. That proceeding was number 7779 in the lower court and number 38,645 in this Court.

The second proceeding was this: On March 24, 1952, six days after H. H. Maples filed his petition, Mrs. Elsie

Maples Howell filed a bill in the same court, making respondents thereto H. H. Maples, James R. Park and the First National Bank of Oxford. She re-asserted the execution of the will by J. R. Maples, his death, probate of the will, issuance of letters testamentary to her, disposition by the will of the ten shares of stock all as set out in Maples' petition. She again set up the agreement between herself and H. H. Maples and his endorsement of stock certificate 294, and her retention of it since the agreement.

She then stated that on November 27, 1951, H. H. Maples had made the affidavit that stock certificate 294 had been destroyed, and that he and Park on the same date had entered into the written agreement undertaking to transfer and assign to Park the life interest of Maples in said five shares of stock, the dividends thereon being reserved by Maples during his natural life; that this agreement was fraudulent; that based upon this affidavit and agreement, and without surrender of certificate No. 294, the Bank, at the request of Park, unlawfully issued to him certificate No. 368 purporting to convey and transfer to him outright title to said five shares of stock; that thereafter complainant offered to deliver to said Bank certificate No. 294 and demanded issuance to her of a new certificate for the H. H. Maples five shares of stock, which request the Bank refused. She prayed (1) that the affidavit and the Maples-Park contract be cancelled; (2) that she be declared the owner of the five shares of stock; (3) that the Bank be required to issue to her a new certificate therefor, and (4) the Bank be enjoined from recognizing Park as having any interest in said stock.

Maples answered. He admitted he was left the life estate, and Mrs. Howell the remainder, in the five shares of stock, etc. He said he had not "knowingly" made any agreement with Mrs. Howell nor endorsed certificate of stock 294; that the first time he knew Mrs. Howell had possession of his stock was on December 8, 1951; that

he had voted the stock and received the dividends thereon since the death of J. R. Maples; that he was not a man of education, or business acumen, and he did not understand the Park contract. He did not make his answer a cross bill against either Mrs. Howell or Park or the Bank. In other words, he did not ask that the Park contract be set aside.

Maples also filed a special demurrer, contending that the alleged agreement with Mrs. Howell was void, being in violation of her duty as executrix, and of sections 619 and 620, Mississippi Code of 1942, and also because no transfer of the stock had been made to her on the books of the Bank as required by Sections 5193 and 5194 of said Code.

Park and the Bank also filed a special demurrer, raising the same questions.

The lower court overruled both demurrers.

The Bank and Park answered. They denied that H. H. Maples "knowingly" had any agreement with Mrs. Howell to transfer to her the stock. They asserted that if the agreement was made it was fraudulent. They said Maples did not know until December 8, 1951, that certificate No. 294 was in the possession of Mrs. Howell. They asserted that the contract between Maples and Park was a legal, valid, binding contract; that Maples was paid $500.00 therefor; that Park rightfully voted said five shares of stock at the stockholders' meeting held January 8, 1952, and the Bank properly issued to Park new certificate No. 368 for said stock, and that Park was the owner thereof, subject to his obligation to remit to Maples the devidends thereon, which he had done since obtaining the stock and stood ready to do in the future. The answer then incorporated the same grounds as had been set up in the special demurrer of Park and the Bank. There was no cross bill by either party.

The trial court adjudged and decreed (1) that Mrs. Howell "is the owner of the legal title and of all rights in and to the five shares of stock . . . represented by

certificate No. 294," and (2) "that she has a right to have said five shares of stock transferred to her on the books of said Bank and a new certificate issued to her representing said five shares of stock upon her request and the surrender of certificate No. 294 for cancellation," and (3) the Bank was ordered to accept surrender of certificate No. 294 and issue to Mrs. Howell a new certificate representing the five shares, but provided that the dividends "when received by the complainant" be paid by her to H. H. Maples; and that (4) said Bank cancel certificate 368 which it had issued to Park. The opinion stated that the affidavit by Maples and his contract with Park constituted a cloud upon the title of Mrs. Howell, but the decree does not contain an adjudication on that question one way or the other, nor does it include any order, or directive, with reference thereto. From that decree Park, the Bank and Maples appeal here.

That case was number 9273 in the lower court, is number 38,644 in this Court, and the style of it is Mrs. Howell v. Park, the Bank and Maples.

The two cases were tried separately in the lower court, but, by agreement, are consolidated here and are to be considered and decided by this Court as one case.

It will be seen that the issues presented to us are between Mrs. Howell, on the one side, and Park, the Bank and Maples, on the other side. We are confronted with no issue under the pleadings as between Park, the Bank and Maples.

 And the first and fundamental question presented by both proceedings is whether or not the testimony is sufficient to sustain the finding of the chancellor that H. H. Maples did, in fact, have some kind of an agreement with Mrs. Howell under which she was to have the physical custody of stock certificate No. 294, and whether Maples, in fact, did endorse the certificate in blank on the back thereof. Mrs. Howell was the only witness for herself on that question in either proceeding. She testified that in September, after the death of J. R. Maples

in June, 1943, she and her four brothers (including H. H. Maples) and her sister, met in the office of Mr. Bob Smallwood, an attorney of Oxford. The will was read and papers prepared for its probate. It was admitted to probate September 15, 1943. She testified that on November 5, 1943, at her request, she and her sister and her husband and three of her brothers, including H. H. Maples, again met in the office of Mr. Smallwood, and that they then had an oral agreement under which she would surrender the certificate for the ten shares and have two other certificates issued by the Bank—one to her and one to H. H. Maples, and that H. H. Maples would endorse and deliver his certificate to her for safe-keeping; that Mr. Smallwood called the Bank over the telephone and informed it of the agreement to have the two new certificates issued; that she and Maples and her husband went to the Bank, and she surrendered the old certificate to the Bank and it issued two new certificates for five shares each—one to her and one to Maples, both being without limitation; that, while in the Bank, Maples signed the certificate of transfer on the back of his stock leaving the date blank; that this was done in the presence of her husband; that she had retained possession of the certificate since that time and had such possession at the time of the trial; that she had never voted the stock; that not until December 8, 1951, did she request the Bank to issue to her a certificate in lieu of certificate No. 294; that she had never collected a dividend, but, instead, the dividends had been paid to H. H. Maples. The force and effect of her testimony is considerably weakened by the fact that she never supported it by that of her sister, or either of her brothers, or her attorney or husband, all of whom, she said, heard the agreement, and all of whom apparently were available to her as witnesses, but some of whom—her attorney and her husband, for instance—could not have been used against her over her objection. The testimony of H. H. Maples on this question is rather vague. He said he did not "know-

ingly" make any arrangement. The original signature on the stock certificate and an admittedly genuine signature of Maples are in the record and they appear to us as non-experts to be the same signature. We have concluded that the evidence is sufficient to sustain the finding of the learned chancellor that some arrangement was, in fact, made, and that Maples signed his name upon the stock certificate. The meaning and effect of the arrangement we will discuss later.

Appellants urge here that there was no consideration for the agreement. Mrs. Howell testified the transfer was made to protect Maples in his life estate and her as remainderman. Also that she agreed to help him if he should need help, and that later she did furnish and deliver to him groceries and feed for stock in the aggregate sum of $125.00; also in 1951, when she and Park and others were trying to procure a proxy from Maples to vote the stock, she went to see Maples at his home in Memphis and put into his pocket the sum of $200.00 with the intent that he use it in the purchase of a refrigerator. We would not be justified in reversing the finding of the chancellor that the arrangement between Maples and Mrs. Howell was supported by an adequate consideration, especially since the chancellor found that Maples signed the stock certificate, thereby consummating the agreement.

At the time the above arrangement was made Mrs. Howell was the qualified, acting executrix in the will of J. R. Maples. Appellants say the transaction was void under Section 619, Mississippi Code 1942. That section provides that an executor (1) shall not borrow, or use for his own benefit, any of the funds or property of the estate, (2) "nor purchase or acquire, directly or indirectly, any interest therein adverse to any creditor or beneficiary of such estate," (3) nor lend such assets to relatives within named degrees or to his attorney. We do not think the section applicable here. The ten shares of stock were covered by one certificate. This was sur-

rendered and two certificates—one each for five shares —were issued, one to Maples and one to Mrs. Howell. That was a distribution of the estate. If any creditor, or a beneficiary having an interest, were contesting the delivery of the stock to Maples and Mrs. Howell, there might be a different situation. And the transaction between Mrs. Howell and Maples took place after the stock had been distributed and delivered to Maples. It is not claimed that there is any creditor, or beneficiary, complaining about, or contesting, the arrangement.

Appellants say Section 620, said Code, prohibits this transaction. It provides that no executor "may sell, assign or transfer any note, bill of exchange, bond, stock certificate or other negotiable paper belonging to the estate committed or entrusted to him by such court * * *" unless so authorized by the will or an order of the chancery court. That section was enacted to protect creditors and those interested in the estate from disposition of the assets by the executor. Here there is no claim the estate is insolvent, or that there are any creditors or that all beneficiaries have not received the specific bequests bequeathed to them, or that abatement among the beneficiaries is needed. We do not think Section 620 invalidates the arrangement here involved.

We come now to the meaning and effect of the agreement. What right in the stock or powers over it were vested in Mrs. Howell? Mrs. Howell testified she wanted physical possession of the stock to protect the life interest of Maples and her remainder interest. The stock was issued to Maples absolutely, and we can see a complication might have arisen had Maples transferred and assigned the stock to some one not knowing he had only a life estate. However, all Mrs. Howell ever claimed was the right to physical possession of the stock. She never claimed any beneficial right or interest therein other than the remainder interest. She was asked "And you are not trying to get any part of that life estate for yourself, are you?" She replied "No, I am not." She

said she was trying to retain the certificate during the life of Maples. She expressly disavowed any right to dividends on the stock. Indeed, it appears that from November 5, 1943, when certificate No. 294 was issued to Maples, to and including 1950, the Bank paid the dividends direct to Maples. The dividend for 1951 was paid to Park and he remitted it to Maples. Nor did Mrs. Howell ever vote the Maples stock, or claim the right to do so. Indeed, it is shown the Bank did not know she had possession of the certificate until this controversy arose. All the time the stock stood on the Bank records in the name of H. H. Maples. Mrs. Howell never requested a transfer of the stock until December 6, 1951, several days after the Park contract of purchase November 27, 1951. Therefore, the extent of the right of Mrs. Howell in the Maples stock was the naked power of physical control of the certificate. She had no beneficial interest in it whatever, except that of remainderman. The chancellor was in error in adjudging "Mrs. Elsie Maples Howell is the owner of the legal title and of all rights in and to the five shares of stock ' * * *, " represented by certificate No. 294, and that she had the right to have a new certificate issued to her and in ordering the Bank to issue to her a certificate upon surrender to it of certificate No. 294. ██ It follows, however, that the lower court was correct in ordering the Bank to cancel certificate No. 368 which it has issued to Park.

Now, as to the right of Mrs. Howell to cancel the purported contract of purchase of the stock by Park. Since we have held that she has the right, and only the right, to retain physical possession of the Maples stock, it follows that the Maples-Park contract does not interfere with that power, and, therefore, she has no right to have that contract cancelled.

It follows that in cause No. 38,645, Maples v. Mrs. Howell, that Mrs. Howell has the right to physical custody of certificate No. 294 during the life of H. H. Maples, but she has no beneficial interest therein, which

means she has no right to vote the stock, or receive dividends therefrom, sell, or transfer the same for any purpose. The appeal costs in this proceeding will be divided and assessed equally between H. H. Maples and Mrs. Howell.

In No. 38,644, Park, et al. v. Mrs. Howell, a similar decree will be entered here as to the rights of Mrs. Howell in the stock, but the Bank will be ordered to cancel certificate No. 368.

We do not pass upon the validity and effect of the contract between Maples and Park and the Bank for the reasons, first, the chancellor did not adjudicate as to that, and, second, because, as between the respondents in this cause, no question is presented to us, there being no cross bill, nor is any affirmative relief asked by any of them as against Mrs. Howell. The cause will be remanded so that the issues may be framed as between Park, Maples and the Bank if they care to do so.

In No. 38,644, Park, et al. v. Mrs. Howell, the appeal costs will be assessed one-fourth to each of the parties to that proceeding.

Affirmed in part and reversed in part and final decree here in cause No. 38,645.

Affirmed in part and reversed in part and remanded in cause No. 38,644.

*Kyle, Holmes, Ethridge* and *Lotterhos*, JJ., concur.